PROSKAUER ROSE LLP
David H. Diamond
Gershom R. Smith
1585 Broadway
New York, New York 10036
(212) 969-3775
ddiamond@proskauer.com
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------x
JI HYUN LEE,                              :
                                          :
                       Plaintiff,         :       09 CV 1117 (LAK)
                                          :
             v.                           :       ECF CASE
                                          :
HOSPITAL FOR SPECIAL SURGERY,             :
                                          :
                       Defendant.         :
-------------------------------------------------------x
```

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION TO ENFORCE THE SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ...................................................................................................2

ARGUMENT........................................................................................................................6

I.    A SETTLEMENT AGREEMENT IS BINDING AND ENFORCEABLE
      WHEN THE PARTIES ASSENT TO ITS TERMS WITH INTENT
      TO BE BOUND BY IT.............................................................................................6

II.   THE *WINSTON* FACTORS....................................................................................8

      A.    Plaintiff Did Not Expressly Reserve The Right Not
            To Be Bound In The Absence Of A Signed Writing ....................................8

      B.    The Hospital Partially Performed The Settlement Agreement .....................9

      C.    All of the Material Terms Of The Settlement Agreement
            Were Agreed Upon .....................................................................................9

      D.    The Agreement Was Committed To Writing................................................10

III.  THE HOSPITAL IS ENTITLED TO AN AWARD OF
      ATTORNEYS' FEES AND COSTS .......................................................................11

CONCLUSION...................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alvarez v. City of New York*,
146 F. Supp. 2d 327 (S.D.N.Y. 2001) ............................................................4, 10

*Conway v. Brooklyn Union Gas Co.*,
236 F. Supp. 2d 241 (E.D.N.Y. 2002) ...........................................................6, 10

*Delyanis v. Dyna-Empire, Inc.*,
465 F. Supp. 2d 170 (E.D.N.Y. 2006) .............................................................6, 8

*Garibaldi v. Anixter, Inc.*,
533 F. Supp. 2d 308 (W.D.N.Y. 2008) ...............................................................7

*Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*,
No. 04 Civ. 1621, 2005 U.S. Dist. LEXIS 11130 (S.D.N.Y. June 9, 2005) ...........6

*Keelan v. Bell Commc'ns Research*,
289 N.J. Super. 531 (App. Div. 1996) .................................................................5

*Meetings & Expositions Inc. v. Tandy Corp.*,
490 F.2d 714 (2d Cir. 1974) .............................................................................6

*Mone v. Park East Sports Med. & Rehab., P.C.*,
No. 99 Civ. 4990, 2001 U.S. Dist. LEXIS 19445 (S.D.N.Y. Nov. 27, 2001) ...............7, 9, 10

*N. Fork Country, LLC v. Baker Publ'ns, Inc.*,
436 F. Supp. 2d 441 (E.D.N.Y. 2006) ................................................................6

*Pretzel Time, Inc. v. Pretzel Int'l, Inc.*,
No. 98 Civ. 1544, 2000 U.S. Dist. LEXIS 14907 (S.D.N.Y. Oct. 5, 2000) ..............5

*Vari-O-Matic Mach. Corp. v. New York Sewing Mach. Attachment Corp.*,
629 F. Supp. 257 (S.D.N.Y. 1986) ...................................................................11

*Walker v. City of New York*,
No. 05-CV-0004, 2006 U.S. Dist. LEXIS 34345 (E.D.N.Y. Apr. 4, 2006) ...................7, 8, 10

*Wesley v. Correction Officer Badge # 9417*,
No. 05 Civ. 5912, 2008 U.S. Dist. LEXIS 2 (S.D.N.Y. Jan. 2, 2008) .....................7, 9

*Winston v. Mediafare Entm't Corp.*,
777 F.2d 78 (2d Cir. 1985) .............................................................................7

6301/35950-001 Current/15051607v3

## PRELIMINARY STATEMENT

Defendant Hospital for Special Surgery (the "Hospital" or "Defendant") respectfully submits this memorandum of law in support of its motion to enforce the settlement agreement agreed upon by the parties at the April 27, 2009 mediation  (the "Mediation").

As set forth below and in the accompanying Declarations of David H. Diamond, Esq., Joseph D. Garrison, Esq., and Michael G. O'Neill, Esq.,[1] during the Mediation, the parties reached agreement on all material terms of a settlement providing for the dismissal of this action with prejudice.  The parties assented to the terms and conditions of the settlement agreement with the intent to be bound by them, and expressly agreed during the Mediation that the settlement as stated would be binding and enforceable, despite the fact that it had not yet been committed to writing.  Subsequently, the settlement agreement was reduced to writing, and all that remained was for Plaintiff to sign the agreement and for the Hospital to issue the checks described therein.

On May 29, 2009, Plaintiff Ji Hyun Lee ("Lee" or "Plaintiff"), represented by new counsel, sent the Hospital discovery requests indicating her intent to ignore the binding settlement agreement and continue with this litigation.  The Hospital seeks an order enforcing the agreement, dismissing this action with prejudice and awarding it the costs and attorney's fees which it has been compelled to expend on this motion.

---

[1] References to the Declaration of David H. Diamond, Esq., and the exhibits thereto, will be cited herein as "Diamond Decl. ¶ __" and "Diamond Decl. Exh. __," respectively.  References to the Declaration of Joseph D. Garrison, Esq., and the exhibits thereto, will be cited herein as "Garrison Decl. ¶ __" and "Garrison Decl. Exh. __," respectively.  References to the Memorandum of Law in Support of Motion to Withdraw and the Declaration of Michael G. O'Neill, Esq. (both filed with the Court on June 8, 2009) will be cited herein as "O'Neill Memo ___" and "O'Neill Decl. ¶ __," respectively.

1

## STATEMENT OF FACTS

On or about February 6, 2009, Plaintiff filed a Complaint alleging that the Hospital violated the Americans with Disabilities Act, the New York Executive Law, and the New York City Administrative Code by "refusing to hire plaintiff on account of her disability" and "refusing to hire plaintiff because she requested a reasonable accommodation for her disability." (Compl. ¶¶ 18-23)  After the Hospital filed its Answer on April 3, 2009, the parties agreed to mediate the dispute, and on April 21, 2009, counsel for both parties signed a mediation agreement, agreeing that Joseph D. Garrison, Esq., of the law firm Garrison, Levin-Epstein, Chimes, Richardson & Fitzgerald, P.C. would serve as mediator.  (Diamond Decl. ¶ 2; Garrison Decl. ¶ 2; Exh. A).

Pursuant to the Section 3 of the mediation agreement, the parties agreed that Mr. Garrison would be disqualified as a witness, consultant or expert in any pending action or proceeding otherwise relating to the subject matter of the Mediation "[e]xcept for the fact of and/or the terms of a mutual settlement."  (Garrison Decl. ¶ 4; Exh. A)  Likewise, the parties agreed that Mr. Garrison and any documents and information in his possession would not be subpoenaed in any investigation, action or proceeding, and all parties agreed to oppose any effort to have him or any documents subpoenaed, "with the sole exception of a proceeding to enforce a settlement reached at the Mediation."  (Garrison Decl. ¶ 5; Exh. A)

On April 27, 2009, Mr. Garrison presided over the Mediation in this matter at the office of Proskauer Rose LLP.  (Diamond Decl. ¶ 3; Garrison Decl. ¶ 6)  In attendance at the Mediation were Mr. Garrison, Plaintiff, her attorney Michael G. O'Neill, Bruce Slawitsky (Vice President of Human Resources for the Hospital), and the Hospital's attorneys David H. Diamond and Gershom R. Smith.  (Diamond Decl. ¶ 4; Garrison Decl. ¶ 7)

2

At the outset of the Mediation, Mr. Garrison reiterated to Plaintiff and to the Hospital that he could not be called as a witness in this matter, unless the parties reached a settlement agreement and expressed their intention to be bound by such agreement, in which case he would testify that agreement was reached by the parties, and that the parties expressed that the agreement was binding and enforceable.  (Garrison Decl. ¶ 8)

After a full day of mediation, the parties agreed to all material terms of a settlement agreement (the "Agreement").  (Diamond Decl. ¶ 5; Garrison Decl. ¶ 9)  The parties agreed to the following settlement terms:

a. The Hospital would pay Plaintiff the gross amount of $60,000 (the "Settlement Payment").

b. Of this amount, a certain amount, to be determined by Plaintiff, would be allocated to her attorney as attorney's fees.

c. The remainder of the Settlement Payment would be allocated 60% to back wages, 40% to emotional distress.

d. In exchange for the Settlement Payment, Plaintiff would sign a full release, though the Hospital agreed to "carve out" any claims for medical malpractice that Plaintiff could have against her doctor (who practices at the Hospital).

e. Plaintiff agreed that she would keep the terms of the settlement agreement confidential except that she could reveal the terms of the agreement to her immediate family, taxing authorities, tax advisors, and any attorney with whom she chose to consult regarding the agreement.

f. Plaintiff agreed to a $15,000 liquidated damages provision with respect to her obligation to keep the agreement confidential.

g. The Parties agreed that Plaintiff would not apply for, and the Hospital would have no obligation to hire Plaintiff into, any position at the Hospital.

h. The Parties agreed that they would not disparage one another.

i. The Parties agreed that counsel for each party would sign a Stipulation of Discontinuance.  (Diamond Decl. ¶ 6; Garrison Decl. ¶ 10)

After the parties had agreed to these terms, Mr. Garrison brought both parties (including Plaintiff) into a conference room.  (Diamond Decl. ¶ 7; Garrison Decl. ¶ 11)  He expressly

3

confirmed with Plaintiff and the Hospital that a mutually acceptable agreement had been reached

at the Mediation and that it was binding and enforceable, notwithstanding the fact that it had not

yet been reduced to writing.  He then again reviewed the terms of the Agreement with both

parties present.  (Diamond Decl. ¶ 8; Garrison Decl. ¶ 11; O'Neill Decl. ¶ 4)  Plaintiff and the

Hospital (through Mr. Slawitsky) expressly agreed that the terms of the settlement were binding

and enforceable.  (Diamond Decl. ¶ 9; Garrison Decl. ¶ 12; O'Neill Decl. ¶ 4)  Mr. Garrison

informed the parties that the case had been settled and that he would so testify, in the unlikely

event that such testimony was necessary.  (Diamond Decl. ¶ 10; Garrison Decl. ¶ 12)

On May 8, 2009, Mr. Smith sent a settlement agreement containing the terms agreed

upon during the Mediation to Mr. O'Neill.  (Diamond Decl. ¶ 11)  On May 14, 2009, Mr.

O'Neill responded with minor revisions to the provision addressing the date the settlement

payment would be made, clarifying the parameters of the agreement's confidentiality provision,

clarifying which Hospital documents in Plaintiff's possession would be returned to the Hospital,

truncating the non-disparagement provision (which he simply shortened to "Lee agrees not to

publicly disparage the Hospital"), and removing the section explaining to whom the agreement

should be returned.  (Diamond Decl. ¶ 12)

Mr. O'Neill and Mr. Smith reached agreement on these language modifications in a

telephone conversation on May 19th, and on May 20th, Mr. Smith sent Mr. O'Neill a revised

Agreement.[2]  (Diamond Decl. ¶ 13; Diamond Decl. Exh. A).  On May 20th, the Hospital's

---

[2] The boilerplate language in section 21 of the written agreement was added by counsel to the parties to reflect that notwithstanding the fact that the parties were bound by their oral agreement, neither party would be required to perform the affirmative acts in the agreement (*e.g.*, the Hospital would not be required to pay the Settlement Sum; Plaintiff would not be required to return the Hospital's documents) until the parties executed the written settlement agreement.  Additionally, because the written agreement was to be the only written record of the agreement reached at the Mediation, the provision of section 19 was intended to forestall potential challenges to its enforceability.  Neither party intended sections 19 or 21 to affect in any way the binding nature of the oral agreement.  *See Alvarez v. City of New York*, 146 F. Supp. 2d 327, 336 (S.D.N.Y. 2001) (enforcing oral agreement and holding that boilerplate language in written agreement was not sufficient to overcome evidence that parties

4

Human Resources Department requested the three checks described in Section 1 of the Agreement.  (Diamond Decl. ¶ 15)  Later that same day, Mr. O'Neill called Mr. Smith and informed him that Plaintiff had just contacted him expressing her dissatisfaction with the outcome of the Mediation, and informing him that she would be removing him from the case and hiring new attorneys.  (Diamond Decl. ¶ 16; O'Neill Decl. ¶ 5)

On May 29, 2009, Derek T. Smith, of the law firm Akin & Smith, LLC noticed his appearance on behalf of Plaintiff and sent discovery requests to counsel for the Hospital by e-mail.  (Diamond Decl. ¶ 17)  On June 8, 2009, Mr. O'Neill moved to withdraw as counsel for Plaintiff.  He noted in his Memorandum of Law in Support of Motion to Withdraw that "this case was settled at a mediation held on April 27, 2009," and wrote in his accompanying declaration that he "kn[e]w of no defense" to the Hospital's intended motion to enforce the settlement agreement, and that he "could not, consistent with Rule 11, oppose the same."[3]  (O'Neill Memo at 3; O'Neill Decl. ¶ 6)

---

intended to be bound by their oral agreement); *Pretzel Time, Inc. v. Pretzel Int'l, Inc.*, No. 98 Civ. 1544, 2000 U.S. Dist. LEXIS 14907, at *9 (S.D.N.Y. Oct. 5, 2000) ("The fact that [one party]'s counsel added boilerplate language to an otherwise substantively identical version of the oral agreement does not undermine the evidence that the [other party] intended to be bound by the oral agreement"); *Keelan v. Bell Commc'ns Research*, 289 N.J. Super. 531, 541 (App. Div. 1996) (noting that where an employee has had 21 days to consider a release, it is, by definition, "knowing and voluntary").

[3] On or about June 9, 2009, Derek Smith filed a "Consent to Change Attorney" signed by himself, Plaintiff, and Mr. O'Neill.

6301/35950-001 Current/15051607v3

## ARGUMENT

### I.  A SETTLEMENT AGREEMENT IS BINDING AND ENFORCEABLE WHEN THE PARTIES ASSENT TO ITS TERMS WITH INTENT TO BE BOUND BY IT.

A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it. *See Meetings & Expositions Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974).

An oral settlement agreement is binding and enforceable when the parties assent to the terms and conditions of the settlement with intent to be bound by it. *See Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 174 (E.D.N.Y. 2006) ("The only essential prerequisite for a valid settlement agreement is that the parties assent to the terms and conditions of the settlement, and, where there is an oral settlement agreement, that the parties intend to be bound by it"); *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 251 (E.D.N.Y. 2002) ("Once a party agrees to the settlement terms, either orally or in writing, that party's later change of heart will not frustrate the agreement's enforceability"). The Southern District has held:

> [A] "preliminary" agreement is binding, despite the desire for a later formal document, when the parties have reached complete agreement (including the agreement to be bound) on all the issues perceived to require negotiation. Such an agreement is preliminary only in form - only in the sense that the parties desire a more elaborate formalization of the agreement. The second stage is not necessary; it is merely considered desirable.

*Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04 Civ. 1621, 2005 U.S. Dist. LEXIS 11130, at *17 (S.D.N.Y. June 9, 2005)

Thus, the parties' intent to record the settlement agreement in the future does not prevent contract formation before execution. *See Delyanis*, 465 F. Supp. 2d at 174, *citing N. Fork Country, LLC v. Baker Publ'ns, Inc.*, 436 F. Supp. 2d 441, 445 (E.D.N.Y. 2006); *Hostcentric Techs., Inc.*, 2005 U.S. Dist. LEXIS 11130, at *12-13 ("Once reached, a settlement agreement

6

constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing") (citation omitted); *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985) (noting that "the mere intention to commit the agreement to writing will not prevent contract formation prior to execution").

In *Winston v. Mediafare Entertainment Corp.*, *see id.*, the Second Circuit created a four factor test to determine whether parties who orally agree to settle a matter (but have not fully executed documents to that end) intend to be bound by those oral representations:  (1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.  No single factor is decisive; each factor provides guidance to the Court.  *See Mone v. Park East Sports Med. & Rehab., P.C.*, No. 99 Civ. 4990, 2001 U.S. Dist. LEXIS 19445 (S.D.N.Y. Nov. 27, 2001).

In determining the parties' intent "[a] court must look, not to their after-the-fact professed subjective intent, but their objective intent as manifested by their expressed words and deeds at the time." *Walker v. City of New York*, No. 05-CV-0004, 2006 U.S. Dist. LEXIS 34345, at *17 (E.D.N.Y. Apr. 4, 2006).  *See also Garibaldi v. Anixter, Inc.*, 533 F. Supp. 2d 308, 312 (W.D.N.Y. 2008) (enforcing oral settlement agreement noting that plaintiff cannot back out simply because he suffers "buyer's remorse" later); *Wesley v. Correction Officer Badge # 9417*, No. 05 Civ. 5912, 2008 U.S. Dist. LEXIS 2, at *6 (S.D.N.Y. Jan. 2, 2008) (noting that "[w]hen a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice

7

simply because his assessment of the consequences were incorrect or because he had a change of mind").

Here, Plaintiff and the Hospital clearly intended to be bound by the terms of the settlement agreement, as agreed upon at the Mediation.  As discussed below, all four of the *Winston* factors are met.

## II.    THE *WINSTON* FACTORS

### A.    Plaintiff Did Not Expressly Reserve The Right Not To Be Bound In The Absence Of A Signed Writing.

Although *Winston* is a balancing test, the first factor, the parties' objectively-expressed intent, is the most important.  *See Walker v. City of New York*, No. 05-CV-0004, 2006 U.S. Dist. LEXIS 34345, at *19 (E.D.N.Y. June 15, 2006) (noting that the "Second Circuit has [] stated, in the context of a binding preliminary commitment, that the first factor is the most important"[4]); *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 175 (E.D.N.Y. 2006) (finding settlement agreement enforceable despite the facts that there was no partial performance and it was the type of agreement normally committed to a formal writing, because although plaintiff stated that she was awaiting receipt of the settlement agreement from the defendants' counsel, she did not expressly reserve the right not to be bound in the absence of an executed writing).

Here, neither Plaintiff nor Defendant expressly reserved the right not to be bound in the absence of a signed agreement.  To the contrary, at the Mediation, both parties expressly *confirmed* to the mediator and each other that the agreement reached was binding and enforceable, notwithstanding the fact that it had not yet been reduced to writing.  (Garrison Decl.

---

[4] The second *Winston* factor, by contrast, is considered the least important. *See Walker*, 2006 U.S. Dist. LEXIS 34345, at *21 (noting that while the first of the *Winston* factors has the power to tip the scales more than the others, "it is this second factor that appears to have had the least sway with the courts.").

8

¶ 11; O'Neill Decl. ¶ 4)  As such, the first (and most important) factor weighs in favor of enforcement.

### B.      The Hospital Partially Performed The Settlement Agreement.

The Southern District has held that a defendant is deemed to have partially performed a settlement agreement where the agreement has been drafted and all that remains is for plaintiff to sign the agreement and for defendant to issue a check.  *See Wesley v. Correction Officer Badge # 9417*, No. 05 Civ. 5912, 2008 U.S. Dist. LEXIS 2, at *8-9 (S.D.N.Y. Jan. 2, 2008) (holding that defendants had partially performed a settlement agreement because counsel for defendants had prepared all of the necessary paperwork and mailed it to Plaintiff for his signature, and the only remaining acts to full performance were for plaintiff to execute and return the release and for the defendants to issue a one-time, lump sum check).

Here, the settlement agreement was reduced to writing and all that remained was for Plaintiff to sign the agreement and for the Hospital to issue the lump-sum checks described therein.  In fact, prior to Plaintiff's attempt to renege, the Hospital's Human Resources Department requested the three checks described in Section 1 of the Agreement.  Thus, the Hospital partially performed the settlement agreement, and this factor weighs in favor of enforcement.

### C.      All of the Material Terms Of The Settlement Agreement Were Agreed Upon.

At the Mediation, the parties agreed to all material terms of the settlement agreement. Subsequent discussions between counsel for the parties addressed the precise wording of some of the agreement's provisions, but no provision agreed upon at the Mediation was removed or altered in any way.  *See Mone v. Park East Sports Med. & Rehab., P.C.*, No. 99 Civ. 4990, 2001 U.S. Dist. LEXIS 19445 (S.D.N.Y. Nov. 27, 2001) (holding that agreement on all "material terms" was sufficient to satisfy the third *Winston* factor, even where the precise language has yet

9

to be agreed upon); *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 251 (E.D.N.Y. Aug. 20, 2002) (enforcing oral settlement agreement where a written draft of the settlement was "essentially [] finalized" and the terms "were substantially complete" and "largely reduced to writing" even though the final dollar amounts had not been agreed upon), noting that that fact that the parties had agreed on the format for the settlement agreement and releases, down to the number of checks to be issued to plaintiff" weighed in favor of enforcement.  As such, the third *Winston* factor weighs in favor of enforcement.

### D.     The Agreement Was Committed to Writing.

Courts in the Second Circuit have held repeatedly that analysis of the fourth *Winston* factor (whether it is the type of contract usually committed to writing) is unnecessary once a draft settlement agreement is created.[5]  In *Mone*, 2001 U.S. Dist. LEXIS 19445, at *8, for example, the Southern District of New York held that the fourth *Winston* factor was moot because a draft settlement agreement had been faxed from counsel for the defendants to counsel for the plaintiff.  The Court noted that while a settlement agreement is the type of contract that is usually committed to writing, "here it was committed to writing, in [defense counsel's] complete and formal draft Stipulation of Settlement."  *Id.  See also Alvarez v. City of New York*, 146 F. Supp. 2d 327, 337 (S.D.N.Y. 2001) (enforcing settlement agreement where draft agreement was "substantially complete" and "largely reduced to writing," though "a couple of items" remained to be negotiated); *Walker*, 2006 U.S. Dist. LEXIS 34345, at *26 (holding that plaintiff's failure to sign the settlement agreement "did not invalidate the binding nature of the oral settlement or

---

[5] In fact, some courts have held that where a settlement agreement has been written and transmitted in draft form, the agreement is enforceable and there is no need to analyze the *Winston* factors at all.  *See Walker*, 2006 U.S. Dist. LEXIS 34345, at *25 (noting that "some courts have considered an oral settlement agreement that was drafted and transmitted between parties to qualify as an actual writing; thus nullifying the need for the four prong *Winston* balancing test").

6301/35950-001 Current/15051607v3

lessen the significance of the written memorialization of the terms"). Here, it is undisputed that the settlement agreement was drafted and transmitted between the parties.

As such, the fourth *Winston* factor weighs in favor of enforcement.

## III.   THE HOSPITAL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS.

At the Mediation, Plaintiff explicitly acknowledged that she would be bound by the agreement reached at the Mediation. In light of this explicit assent to be bound, Plaintiff's attempt to renege on the agreement shows bad faith. As such, the Hospital is entitled to recover the attorneys' fees and costs incident to the filing of this motion. *See Vari-O-Matic Mach. Corp. v. New York Sewing Mach. Attachment Corp.*, 629 F. Supp. 257, 259 (S.D.N.Y. 1986) (holding that where one party has acted in bad faith in requiring the other to file a motion to enforce a settlement agreement, the party filing such motion "is entitled to recover not only costs incident to the filing and prosecution of the motion but reasonable attorney's fees as well").

11

## CONCLUSION

An oral settlement agreement is binding and enforceable when the parties assent to the terms and conditions of the settlement with intent to be bound by them.  The determination as to whether parties who orally agree to settle a matter intend to be bound by those oral representations is made using the four *Winston* factors, all of which weigh in favor of enforcement of the settlement agreement.  For the foregoing reasons, Defendant respectfully requests that the Court enforce the settlement agreement as written, dismiss this matter with prejudice, and award it the costs and attorney's fees which it has been compelled to expend on this motion.

Dated:  New York, New York
        July 14, 2009

                              Respectfully submitted,

                              PROSKAUER ROSE LLP

                    By:  /s/ David H. Diamond
                         David H. Diamond
                         Gershom R. Smith
                         1585 Broadway
                         New York, New York  10036
                         (212) 969-3000
                         *Attorneys for Defendant*

12